UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| EFRAUD SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: |
| v. | ) |
| | ) |
| SGS VENTURES, LLC DBA | ) |
| ELEVATE CONSULTING, | ) |
| | ) |
| Defendant. | ) |

**VERIFIED COMPLAINT**
Injunctive Relief Requested
Demand for Jury Trial

1. Plaintiff eFraud Services, Inc. ("Plaintiff"), by and through its undersigned counsel, brings this Complaint against SGS Ventures, LLC d/b/a Elevate Consulting ("Elevate") requesting a declaratory judgment as to the lack of formation of a contract and asserting breach of the implied warranty for a particular purpose and breach of contract.

**NATURE OF THE CASE**

2. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure.

1

3.      Plaintiffs also seek damages for Elevate's breach of contract and breach of the implied warranty of fitness for a particular purpose.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 due to diversity of citizenship and an amount in controversy over $75,000 as well as 28 U.S.C. §1367 for the related state law claims.

5.      This Court has general personal jurisdiction over Elevate because, on information and belief, it regularly provides services and sells software in the State of Florida in the ordinary course of commerce, trade, or use and, to the extent one exists, breaching a contract by failing to perform acts required by the contract.

6.      On information and belief, this Court has specific personal jurisdiction over Elevate because, to the extent one exists, Elevate breached a contract by failing to perform acts required by the contract, breached an implied warranty of fitness for a particular purpose causing harm in this state, and Elevate has sufficient minimum contacts with the State of Florida so as to purposefully avail itself of the privilege of conducting business activities within Florida.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

8.　　Plaintiff is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 2430 Vanderbilt Beach Rd., Suite 108-251, Naples, Florida 34109.

9.　　Elevate is a limited liability company having a state of organization of Delaware and a principal place of business at 5000 Birch Street, Newport Beach, California 92660.

10.　　On information and belief, Elevate's sole member is Kevin Schreck. On information and belief, Mr. Schreck is a citizen of the State of Maryland.

11.　　Plaintiff provides forensic accounting services. Specifically, Plaintiff provides an AI-supported software-as-a-service ("SaaS") that allows for the conversion of bank statements that are then used as part of a forensic accounting analysis. A summary of Plaintiff's service is provided below, as shown on Plaintiff's website:





https://www.efraudservices.com/efraud-how-it-works/ (last visited July 21, 2025).

12. Plaintiff was formed in 2020 and was starting to find financial success with its platform prior to its association with Elevate.

13. On average, Plaintiff reduces the amount of labor needed to discover financial fraud by over 99%. For example, eFraud was used to reduce the amount of time needed to analyze a case that would have normally 2,000 hours to analyze by hand by 99.5%; 10 hours in total. *See* https://www.efraudservices.com/efraud-how-it-works/ (last visited July 21, 2025).

14. On information and belief, Elevate is a software development company that prepares web and mobile applications, AI integrations,

infrastructure development, UI/UX experiences, and custom platforms, among other services.

15. Plaintiff attempted to engage Elevate to provide software to improve its SaaS platform. Specifically, Plaintiff wanted Elevate to provide software that would integrate with Plaintiff's SaaS product that would allow customers to select certain products and have a subscription service set up automatically.

16. Elevate's CEO, Kevin Schreck, provided Plaintiff with a Master Service Agreement ("MSA") on or around August 19, 2024. The MSA was resent along with two service orders on August 23, 2024. The MSA and one of the service orders remains unsigned and undated to this day. A copy of the MSA is attached hereto as **Exhibit A**.[1]

17. The MSA states that the "Effective Date" of the agreement is set forth in the preamble and refers to the date "upon which this MSA becomes binding on the Parties." Ex. A at § 1.2.

18. The term of the MSA starts "<u>on the Effective Date</u> and continu[es] until the earlier of (i) the date that all obligations of the Parties under all Service

---

[1] In the event that the MSA is deemed to have been entered into between the Parties, Plaintiff, out of an abundance of caution, intends to file these exhibits under seal. Section 8.1 of the MSA states that the MSA and other related documents are considered confidential and cannot be disclosed without prior written consent. Plaintiff does not intend for these sealed filings to amount to an admission that the MSA was entered into between the Parties.

Orders are completed or (ii) either Party terminates pursuant to the terms and conditions herein." *Id.* at § 10.1 (emphasis added).

19. The MSA is undated in the preamble.

20. Two service orders were sent to Plaintiff from Elevate on August 24, 2024, one of which was signed by Plaintiff on August 26, 2024 (the "August Service Order"). The August Service Order contained terms that Plaintiff agreed to; namely, rates for Elevate's professional services, a term (12 months), and a description of the work to be performed. A true and correct copy of the August Service Order is attached hereto as **Exhibit B**.

21. Elevate began invoicing Plaintiff on September 5, 2024, for work performed after August 26, 2024. Plaintiff paid these invoices until it became apparent that Elevate could not provide the product that was promised.

22. Plaintiff paid Elevate $69,262.50 prior to determining that Elevate would not be able to perform the work that was promised.

23. The August Service Order also contains the statement "The Master Service Agreement dated Aug 23, 2024 between Customer and SGS Ventures, LLC dba Elevate Consulting and Exhibit A – Statement of Work is hereby incorporated into this Statement of Work."

24. No Master Service Agreement dated August 23, 2024, exists.

25. Even as of November 20, 2024, Elevate recognized that no MSA had been signed. A true and correct copy of the November 20, 2024, email from Kevin Schrek to Plaintiff is attached hereto as **Exhibit C**.

26. Plaintiffs continued to work with Elevate pursuant to the terms of the August Service Order. However, it became apparent shortly after Elevate began to implement attempting AI integration that Elevate was not capable of the job. Elevate had represented to Plaintiff that it possessed the requisite expertise and technical capabilities to develop the software product that the Parties had agreed would be developed for Plaintiff's specific purpose but were not up to the job.

27. Plaintiff retained an independent software development expert who identified numerous critical flaws in Elevate's product which were remedied by the same expert within three weeks. Elevate had been working on the product for over three months at this point.

28. Plaintiff lost out on a contract worth at least $90,000 because it was unable to provide its product with Elevate's incorporated software.

29. From August 2024 through March 2025, Elevate invoiced Plaintiff nearly $95,000 for shoddy, incomplete, and incompetent work.

30. When it was determined that Elevate would likely not be able to produce what it promised in or around January 2025, Plaintiff began to attempt to fix the issues themselves while working with Elevate based on Plaintiff's limited

coding knowledge base. Finally, when it became evident that Elevate would not be able to provide the promised integration even with Plaintiff's assistance, Plaintiff sent Elevate a letter on March 6, 2025, terminating the relationship and explaining all of the issues caused by Elevate's performance. A true and correct copy of the March 6, 2025, letter is attached hereto as **Exhibit D**.

31. Elevate sent a response letter on March 14, 2025, denying many of the assertions in Plaintiff's letter. A true and correct copy of the March 14, 2025, letter is attached hereto as **Exhibit E**. Elevate demanded that Plaintiff pay the termination fee according to Section 10.2 of the MSA.

32. When Plaintiff did not respond to the March 14, 2025, letter, Elevate sent another letter on April 1, 2025, restating the points of the March 14, 2025, and threatening litigation if payment on the outstanding invoices was not made. A true and correct copy of the April 1, 2025, letter is attached hereto as **Exhibit F**.

33. Plaintiff did not respond to Elevate's April 1, 2025, letter.

34. On June 27, 2025, Elevate filed a demand for arbitration with the American Arbitration Association ("AAA"). A true and correct copy of Elevate's demand and associated statement of claims is attached as composite **Exhibit G**.

35. Between July 8, 2025, and July 10, 2025, counsel for Elevate corresponded with AAA's Manager of ADR Services. AAA requested a signed copy of the MSA. Elevate's counsel responded by stating that Plaintiff's signature

on the August Service Order constituted acceptance of the MSA and use of the term "industry standards" somehow meant that Plaintiff was quoting the language of the MSA. A true and correct copy of the email thread between AAA, Elevate's counsel, and Plaintiff's counsel is attached hereto as **Exhibit H**.

## COUNT I – DECLARATORY JUDGMENT
### (No Master Service Agreement Between Parties)

36. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in Paragraphs 1-35 above.

37. Elevate presented an offer in the form of the MSA.

38. The MSA was never read by Plaintiff until after Elevate demanded arbitration.

39. The MSA is undated and unsigned.

40. Elevate presented an offer in the form of the August Service Order which was accepted by Plaintiff where assent was shown by Plaintiff's and Elevate's signature.

41. Plaintiff signed the August Service Order last.

42. The August Service Order contains consideration in the form of payment terms for Plaintiff and work to be performed by Elevate.

43. The August Service Order attempts to incorporate "[t]he Master Service Agreement dated Aug 23, 2024 between [Plaintiff] and SGS Ventures, LLC dba Elevate Consulting" but no such Master Service Agreement exists.

44. Parties cannot be forced to submit to arbitration if they have not agreed to do so. *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 478, 109 S. Ct. 1248, 1255, 103 L. Ed. 2d 488 (1989).

45. Ordinary state-law principles govern the formation of contracts in determining whether parties have agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)

46. Elevate is attempting to enforce Section 11.4 of the MSA requiring Arbitration.

47. Accordingly, a justiciable controversy exists between Plaintiff and Elevate such that Plaintiff is entitled to a declaration that the MSA was never in force, that arbitration is not mandatory, and that the August Service Order is the only enforceable agreement between the parties.

### COUNT II – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

48. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in Paragraphs 1-35 above.

49. On information and belief, Elevate knew that Plaintiff had need for software that performed a particular purpose for integration within Plaintiff's SaaS product.

50. Plaintiff relied on Elevate's skill and judgment to develop the goods for the required purpose.

51. On information and belief, Elevate knew of Plaintiff's reliance.

52. The software product provided by Elevate was unfit for Plaintiff's purpose.

53. Elevate did not disclaim the implied warranty because either (1) the MSA was not in force or (2) the MSA does not expressly disclaim it.

54. Plaintiff suffered damage as a direct result of Elevate's breach of the implied warranty.

55. Plaintiff notified Elevate of its breach in the March 6, 2025, letter as soon as it became clear that Elevate would not be able to provide a fully working product to integrate within Plaintiff's SaaS product.

## COUNT III – BREACH OF CONTRACT
### (Breach of August Service Order)

56. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in Paragraphs 1-35 above.

57. Plaintiff and Elevate entered into the August Service Order agreement on August 26, 2024.

58. Plaintiff provided consideration in the form of a promise for payment for services according to the professional service rates in the August Service Order.

59. Elevate provided consideration in the form of the Statement of Work to be performed in Exhibit A of the August Service Order.

60. Elevate failed to provide the promised improvements to Plaintiff's SaaS solution.

61. Elevate's breach of the August Service Order was of a material term in the August Service Order. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

62. That Defendants and each of their agents, employees, servants, attorneys, successors, affiliates and assigns, and all others in privity or acting in active concert or participation with any of them be preliminarily and permanently enjoined from enforcing the arbitration provision under section 11.4 of the MSA.

63. All damages due to Plaintiff due to Elevate's breach of the August Service Order.

64. That Defendants be assessed punitive damages in an amount to be determined at trial which would serve to deter them from similar unlawful conduct in the future.

65. That this Court award such other and further relief as it shall deem appropriate.

66. Plaintiff requests a jury trial on all issues so triable.

| | |
|---|---|
| Dated: August 29, 2025 | */Cole Carlson/* <br> Cole Carlson <br> Florida Bar No. 112863 <br> Carlson IP Law, LLC <br> 503 E Jackson Street <br> Suite 901 <br> Tampa, FL 33602 <br> Tel: 813-445-5175 <br> Email: cole@carlsoniplaw.com <br><br> Attorney for Plaintiff |

## VERIFICATION

I, Barbara Steinberg, declare as follows:

1. I am the CEO of eFraud Services, Inc., the Plaintiff in this matter.

2. I have personal knowledge of the facts and allegations presented in the foregoing Complaint and if called upon to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the law of the United States of America that the factual statements in this Complaint are true and correct.

Executed on August 29, 2025.

*Barbara Steinberg*
Barbara Steinberg